**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY T. LEE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Intervenor and ) | |
| Amicus Curiae, ) | CIVIL ACTION NO.:  3:70-cv-844-WKW |
| ) | |
| NATIONAL EDUCATION ASSOCIATION, ) | |
| INC., ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | |
| ) | |
| CHAMBERS COUNTY BOARD OF ) | |
| EDUCATION, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION FOR IMMEDIATE RELIEF INCLUDING SCHOOL
CLOSURES, CONSOLIDATIONS AND APPROVAL OF
STUDENT ASSIGNMENT PLAN**

COME NOW the Defendants, the Chambers County Board of Education, (hereinafter sometimes referred to as "Defendants" and sometimes "the Board") by and through their undersigned attorney, and respectfully move this Honorable Court for Immediate Relief approving school closures, consolidations and a student assignment plan as more fully set forth herein. As grounds for said Motion, the Defendants show unto the Court the following:

1. This case was initiated approximately fifty (50) years ago to remedy the dual de jure school system that was then in operation throughout the State of Alabama and by this Board.

2. By Orders of March 22, 1967, the Lee vs. Macon County Court ordered the State Superintendent of Education to require that the Board, along with numerous other school districts,

1

desegregate schools. The Comprehensive Orders included provisions for desegregation of faculty, students, facilities, transportation and other areas deem necessary for effective desegregation.

3. On February 12, 1970, the Board was ordered to implement its desegregation plan for the complete disestablishment of the dual system effective with the 1970-71 school year. In that order, the Court entered a "Singleton" Order setting forth the terms and conditions under which the Board was to immediately desegregate.

4. Over the years, certain actions have been taken with respect to student assignment in the schools. For example, there have been certain schools closed and their student populations rezoned to attend other schools and there have been schools which have been paired to further desegregation.

5. In 1993, this Court entered an Order in which among other things, the Board was ordered to support a new consolidated high school for the county and was ordered to close Lafayette-Lanier Elementary School. For various reasons throughout the years, mainly to do with finances associated with the building of a new high school, a new consolidated high school has not been built. Likewise, Lafayette-Lanier has not been closed due to the need for its use to house the growing population of students.

6. For a number of years, the case remained dormant with very little being done. During those years the Board continued to file its annual reports to the Court but beyond that, nothing of any consequence was done from a legal standpoint.

7. In January of 2015, this Honorable Court issued an Order effectively seeking input from the parties as to what is necessary to bring this case to a conclusion, that is, that the Board could be declared unitary and federal supervision relinquished. Since that time, the parties have worked together diligently conducting extensive paper discovery and a number of depositions,

conducting site visits by the parties and their experts, exchanging expert reports, etc. After extensive negotiations a proposed Consent Decree along with a Joint Motion seeking its approval was filed on May 19, 2022. Doc 480. The Consent Decree had been approved by the Board and all parties together with the reviewers/supervisors for the Justice Department and the NAACP-LDF.

8. However, subsequently, the Private Plaintiffs asked for a status conference (Doc 481) and then filed a Notice that they no longer consent to certain portions of the agreement. Doc 483. A conference with the Court was held on Wednesday, June15, 2022. Doc. 482. 9.The Court entered an Order on June 15, 2022, after the status conference, allowing the Defendants to file a Motion for Immediate Relief among other things. Doc. 485. This Motion is filed as allowed by the Court's Order seeking immediate authorization to take certain action for the upcoming school year.

9. Between 2010 and 2020, according to the US Census Bureau, overall Chambers County has grown by approximately 550 people. However, since 2015-2016 school year, student enrollment has decreased by approximately 350 students. In 2015-16 there were approximately 3,739 students in the entire system; for the 2021-22 school year there were approximately 3,381 students in the system. The western portion of the County, specifically, the areas surrounding the towns of Lafayette and Five Points, have decreased between 2010 and 2020 in population by nearly 1,000 residents. The southeast portions of the County surrounding the towns of Lanett and Valley have increased by approximately 1,550 residents. See *Exhibits A and B,* attached hereto and made a part hereof.

10. *Exhibit C*, which is attached hereto and made a part hereof, gives an overview of the current schools based on this past school year. It shows the capacity of each school, the current

enrollments by race and the percentages. *Exhibit D,* which is attached hereto and made a part hereof, shows the per pupil expenditures by school for this past school year.

11.     The Board has approved a plan, to which all parties originally agreed, which if approved by this Court would further desegregate the schools and lead to better program opportunities for all students and better utilization of the buildings currently in use. Specifically, the Board plan includes among other things the following:

(a)     Effective for the upcoming school year, Eastside Elementary School would be repurposed to include all Pre-K through 8th Graders in the Lafayette area zone. In conjunction with this, the Board would close Five Points Elementary School and JP Powell Middle School and assign those students to the Eastside Elementary School. Eastside would transition to a Magnet school.  See *Exhibit E*, which is attached hereto and made apart hereof, and which generally describes the proposed magnet program.

(b)     Five Points school would be closed effective for the upcoming school year, that is, 2022-2023. It currently houses approximately 103 students, 65 of whom are white, in grades K through 8. Some of the classes are conducted with two grades in the same room; for example, with a kindergarten class on one side of the room and a first-grade class on the other side of that same room. By closing this school, a number of white students would be reassigned to Eastside thus furthering desegregation by increasing the number of white students in that school from approximately 29 to approximately 94. Additionally, the cost to operate this school per student is approximately $17,036.00 per year, which is far more than the costs to operate other schools per student.  Additionally, by closing this underutilized and inefficient school, the Board would save operational costs. This money could then be used to support the financing of a consolidated high school for the County.

(c)     The closing of JP Powell Middle School (grades 6-8) would also be effective for the 22-23 school year and those students would be assigned to Eastside Elementary School. This would add approximately 121 students, 12 of whom are white. This would also further desegregation by adding more white students to the student population at Eastside. JP Powell is a school in need of substantial upgrades to its physical condition but to do so would not be financially prudent given its age and the small number of students. Its closure would save money in operational costs which could also be used for the financing of a consolidated high school.

(d)     Eastside has a capacity of 705 students. The addition of the students from Five Points and JP Powell would bring the total number of students at that school including those that are already assigned there to 491, well within its capacity.

(e)     Bus transportation would be provided from Five Points and from JP Powell to Eastside. *Exhibit F* which is attached hereto and made a part hereof shows the demographics of the bus routes and compares the times this past year to the expected times for the upcoming year. The time spent on the buses in almost all cases next year would be the same as this year or less.

(f)     In addition, the Board proposes to close Lafayette-Lanier Elementary School located in the Valley area and reassign its students in a manner that furthers desegregation for the upcoming school year to a school in the Valley area. This would also save operational costs that could be used for financing a consolidated high school. Lafayette-Lanier is old and in deteriorating shape. On one occasion this year a teacher literally fell through the floor when the floorboards gave way. Additionally, the gymnasium that the students must use is across a very heavily traveled road and can only be accessed by going outside and going under the road through a tunnel/bridge to an older gymnasium.

(g) One additional benefit from these closures is the use of the teachers. Currently due to a shortage of teacher applicants coupled with retirements and normal attrition, the Board is experiencing problems staffing some of the schools. If the Board is required to keep the three schools open, there will be a need for more teachers than the Board has available and that it has applicants. By closing these schools, the Board can utilize the teachers who are transferred to assist with the shortages.

(h) The Board is of the opinion that these closures, consolidations and reassignments will further desegregation from the standpoint of student assignment and that along with that, the racial makeups of the faculties will be better balanced, the programs offered will be better balanced, the facilities will be better balanced, there will be cost savings and this will ultimately result in all of the Green factors being appropriately addressed. No employee will lose his/her job as a result of these actions.

(i) The Board has in reliance on the earlier agreement of all parties begun planning for these closures for the upcoming year and feels confident those closings can be accomplished.

12. **Position of the United States.** The United States does not at this time object to the plan outlined in the District's Motion subject to receipt of additional information, and subject to the District's commitment to submit to this Court prior to June 30, 2022, a proposed order which will detail the specific steps the District will take to ensure equal educational opportunities for all students affected by the proposed closures and consolidations, including, but not limited to, the development and operation of a K8 Steam Academy at the current Eastside Elementary School.

13. **Position of Private-Plaintiffs.** Private Plaintiffs object to the closure of any school, specifically in the Lafayette feeder pattern, and request that all impacted persons be granted an opportunity to be heard directly before the court.

14. The most recent pronouncement regarding the law in cases of this nature is found in the Opinion issued by Judge Proctor of the Northern District of Alabama on April 25, 2022. In the case of Patricia Horton v. Lawrence County Board of Education, 2022 WL 1217240, the Court considered the proposed closing of a majority black high school and the transfer of its students to other schools. The Opinion states the following:

> The court has an important but necessarily circumscribed role when confronted with a motion like this. It is not the court's role to make policy decisions (*i.e.*, to decide how to allocate the District's budget or whether closing a school is in the best interest of the community). To be sure, those policy decisions are emphatically for the elected officials (*i.e.*, the Board) to make, not the court. To be sure, if the court sat as a super school board (and again, to be clear, it does not), it may not have proposed the plan offered here. The court recognizes the concerns of the R.A. Hubbard community, particularly those voiced at the hearing and in the court record, related to the problems and uncertainties of their students moving locations next school year. However, the court's narrow role in this case is limited to deciding the following issues: (1) whether the Board's plan reverts the District to a dual system of segregation; (2) whether the Board's decision to close a majority-minority school was racially motivated; and (3) whether Black students bear a disproportionate burden of those proposed desegregation efforts. *Harris,* 968 F.2d at 1097; *Geneva County.,* 892 F. Supp. at 1395.

Id.@6.

Considering these issues, the Board respectfully submits that it is appropriate to allow the closings as requested herein.

7

15. <u>NOTICE:</u>  This Honorable Court in its Order of June 15, 2022, instructed the parties to provide thoughts on advising the public of the upcoming hearing to be held on June 30, 2022. Attached to this Motion is a draft of a Proposed Notice to be issued. See *Exhibit G*. The Board proposes to post this on its website and at all schools as well as putting it on Facebook.  The Private-Plaintiffs who have requested such a hearing should be able to provide notice of this hearing if they have not already done so to their clients and through them to other members of the community who might be interested.  The Board proposes also to post this Notice in the local newspapers; however, because those newspapers do not run daily, and it may be difficult to get that Notice into the papers in time for the upcoming hearing on June 30.

WHEREFORE, THE PREMISES CONSIDERED, the Board respectfully moves this Honorable Court to grant it immediate relief in the following manner:

1) To allow it to close Five-Points School, K-8, effective immediately and transfer those students to Eastside School for the beginning of the 22-23 school year.

2) To allow it to close JP Powell Middle School, grades 6-8, immediately and transfer those students for the school year 22-23 to Eastside School.

3) To allow it to begin the transition of Eastside Elementary School to a magnet school effective for the 22-23 school year.

4) To allow it to close Lafayette-Lanier School located in Valley, Alabama, immediately, and transfer those students to another school in the Valley area.

5) To allow it to transfer or reassign all faculty and staff associated with the schools being closed to positions within the system on a non-discriminatory basis such that none of them lose their jobs as a result of the proposed closures.

The Board respectfully requests such other, different and general relief to which it may be entitled under the circumstances.

Respectfully submitted,

*/s/ Robert T. Meadows, III*

Robert T. Meadows, III
CAPELL & HOWARD, P.C.
Skyway Professional Center
3120 Frederick Road, Suite B
Opelika, AL  36801
(334) 501-1540 Phone
(334) 501-4512 Facsimile
Bob.meadows@chlaw.com
Attorney for Chambers County
Board of Education

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 22nd day of June 2022, I electronically served a true and correct copy of the foregoing document on all counsel of record in the above-captioned matter.

*/s/ Robert T. Meadows, III*
OF COUNSEL