IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY T. LEE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor | ) | |
| and Amicus Curiae, | ) | |
| | ) | |
| and NATIONAL EDUCATION | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:70-CV-844-WKW |
| | ) | [WO] |
| CHAMBERS COUNTY BOARD | ) | |
| OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

On August 22, 1963, Judge Frank Minis Johnson, Jr., issued an order permitting Anthony T. Lee, the original plaintiff in this action, to fight against segregation in Macon County on behalf of all "Negro children, living and residing in various areas of Macon County, Alabama." *Lee v. Macon Cnty. Bd. of Educ.*, 221 F. Supp. 297, 298 (M.D. Ala. 1963). By virtue of this order, Mr. Lee's attorneys were appointed to represent all of these children in Macon County.

Since that 1963 order, this case has morphed to cover a different county, a different generation of children, and a different set of facts and circumstances. But the attorneys have remained. Today, Mr. Lee's attorneys are the court-appointed representatives for the Black students and their parents/guardians in the Chambers County school district.

Chambers County sits on the Alabama-Georgia border and has a population of just over 32,000. The Chambers County school district covers most of the county, only with the exception of the City of Lanett, which has maintained a separate school district since 1898. The county school system serves approximately 3,270 students. The northern and western portions of the county are divided from the southeastern corner of the county in many ways—by an interstate highway, cultural differences, demographics, and even a time zone line.[1]   While the divisions are not insurmountable, they are a very real part of the county's politics.

_____

[1]  In the Standard Time Act of 1918, Congress placed the entire state of Alabama in the Central Time Zone. Nonetheless, some communities on the Alabama side of the Georgia-Alabama border remained in the Eastern Time Zone to accommodate local industry—specifically for Chambers County, to accommodate local textile mills. Today, the textile mills are gone, but the *de facto* use of Eastern Time has persisted, and it has created significant problems for the communities in Chambers County. For the schools, hardship has been created when parents work in a time zone different from the one in which their children attend school, when two children in a family attend school in different time zones, or when buses must service two time zones on one route.

The problems, of course, are not limited to the schools. Because the use appears to be unofficial, there is no clear line demarcating the boundary between Eastern Time and Central Time in Chambers County. Some identify only the cities of Valley and Lanett as using Eastern Time (along with other towns in other border counties). *See* Kelly Kazek, *Do You Know Which Alabama Towns Are in a Different Time Zone?*, AL.com (February 6, 2017), https://www.al.com/living/

2

The responsibility to represent all the students and parents/guardians in a county is immense and complicated. But some aspects are simple. One simple fact that applies to every lawyer-client relationship is the fact that the words of a lawyer can bind his or her client—even a client as amorphous as the plaintiffs here.

On May 19, 2022, after years of negotiations and extensive meetings, *all* the parties in this sixty-year-old case filed a *joint* motion to approve a proposed *consent* order. The motion stated that: "The Parties agree that the attached Proposed Consent Order . . . will reasonably ensure that, if fully implemented, the District will eliminate the vestiges of *de jure* segregation . . . and will provide equal educational opportunities to all of the students enrolled in the District." (Doc. # 480 at 3.) The motion was signed by counsel for *all* the parties, including counsel for the Black students and parents/guardians, who today are represented by Stanley F. Gray and GeDá Jones Herbert. (Doc. # 480 at 7.)

The agreement submitted by the parties detailed several important changes to be made to the Chambers County school system, including the consolidation of the two high schools in the system; the establishment of a magnet school to primarily serve the northern and western reaches of the county; the closure of three schools in

2017/02/do_you_know_which_alabama_town.html. At the public hearing on June 30, 2022, the court learned that other surrounding communities, such as Hugeley, also operate by Eastern Time. Because of the lack of clarity, law enforcement, ambulances, and hospitals face significant issues when trying to keep proper records.

various parts of the county; and the establishment of a desegregation advisory committee.

Counsel for all parties signed this agreement. Counsel for all parties bound their clients to the terms of this agreement. Counsel for all parties bound their clients to the conclusion that the terms of this agreement will, "if fully implemented, . . . eliminate the vestiges of *de jure* segregation." (Doc. # 480 at 3.)

On the following day, May 20, 2022, counsel for the Black students and parents/guardians issued a press release, saying that the attorneys were "happy to report" the terms of the agreement, and that the proposal "addresses the many concerns our clients raised." NAACP Legal Defense Fund, *LDF Issues Statement on New Consent Decree in Chambers County Desegregation Case*, (May 20, 2022), https://www.naacpldf.org/wp-content/uploads/PR-Chambers-Co-consent-decree-FINAL_4-1.pdf.

Two weeks passed. And two weeks, it seems, can change everything. On June 2, 2022, counsel for the Black students and parents/guardians filed a motion styled as a "Motion for Status Conference." (Doc. # 481.) In the motion, counsel stated that "members of the class have asserted opposition to the proposed closure or consolidation of schools under the proposal." (Doc. # 481 at 2.) A subsequent filing identified the general points of opposition that counsel had received from

members of the class, including opposition to the proposal for consolidation of the high schools and opposition to the closure of other schools. (Doc. # 483.)

The court, after discussing the proposal with counsel and considering the scope of the order, declined to approve the plan in full for the 2022–23 school year. (Doc. # 487.) Specifically, the court was concerned with the lack of detail regarding funding, location, and logistics for the proposed consolidated high school, and certain aspects of the plan to temporarily send all high school students to one of the two existing campuses.

To be clear, when the details are finalized and approved, consolidation of the two high schools will be ordered and monitored. The court ordered generally the consolidation of these schools decades ago. The Board does not need further approval to pursue consolidation of these schools. But what the Board must do is provide further details regarding the consolidation and time for a full and fair opportunity for the public to comment on those details in a federal courtroom. That simply is not possible on the timeline proposed by the parties.

Consequently, on June 16, 2022, the court entered an order deferring consideration of the total plan until a later date. (Doc. # 485.) But although the high school consolidation was not possible before the new school year, the court did indicate that it would accept a motion for immediate relief, seeking approval of one or more components of the proposed order, such as school closures. (Doc. # 485 at

2.)  The Board filed such a motion, requesting permission to take four measures before the start of the new school year:

1.     The Board seeks permission to close Five Points School and transfer those students to Eastside Elementary School.

2.     The Board seeks permission to close J.P. Powell Middle School and transfer those students to Eastside Elementary School.

3.     The Board seeks permission to transition Eastside Elementary School to a magnet school and to permit the enrollment of sixth-, seventh-, and eighth-grade children at the school.

4.     The Board seeks permission to close Lafayette-Lanier Elementary School and transfer those students to another school in the local area.

Each item requested by the Board was part of the consent order proposed by the parties.[2]  Counsel for the students and parents/guardians consented to these items—and, further, agreed that these items would aid in achieving unitary status in the Chambers County school system.  But counsel now reports that their clients "object to the closure of any school."  (Doc. # 486 at 6.)

---

[2] (Doc. # 480-1 at 7 ("The District will close J.P. Powell Middle School and Five Points School at the end of the 2021-22 school year and all students zoned for Eastside Elementary School, J.P. Powell Middle School, and Five Points School will be assigned to the STEAM Academy"); Doc. # 480-1 at 7 ("The STEAM Academy will be located initially at the current Eastside Elementary School facility . . . ."); Doc. # 480-1 at 8 ("The District will close LaFayette Lanier Elementary School at the end of the 2021-22 school year, and all students zoned for Lafayette Lanier Elementary School will be assigned to Fairfax Elementary School effective beginning with the 2022-23 school year.").)

6

To provide a full and fair process before taking action on the motion, the court solicited comments from the public and held a public hearing on June 30, 2022. Significant comment was received both orally and in writing. The court provided an opportunity for a representative of the Board to respond to the public comment, and counsel for all parties were allowed to explain their positions and provide any legal argument on the motion.

Many concerns were raised with the plan—from bullying among students, to driving times for school pickups, to the loss of close-knit school communities. Heartfelt and passionate pleas were made on both sides.

The United States government, which intervened in this case in support of Mr. Lee and the Black children many years ago, also signed the May 19, 2022 proposal. Consistent with its statements in the original proposal, the United States has informed the court that it does not oppose the school closures that the Board now requests. (Doc. # 486 at 6.)

Now the matter has been submitted to this court for a decision. A federal court's role in this process is limited. The court does not tell the school board how to make policy decisions, and the court cannot be a roadblock when the school board seeks to close an underutilized school in favor of offering more educational opportunities at a larger school, unless the school board somehow acts in an unconstitutional manner. *See Harris ex rel. Harris v. Crenshaw Cnty. Bd. of Educ.*,

968 F.2d 1090, 1095 (11th Cir. 1992).  Instead, the court's role is to ensure that the plan is not racially motivated and that Black students do not bear a disproportionate burden under the plan.  *Id.* at 1097.

Having considered the objections from the public and their attorneys, the court first notes that the objections must be overruled as waived.  The consent provided by counsel bound their clients, and the consent included exactly the measures proposed here.

But second, the court overrules the objections because the concerns raised do not amount to a violation of the United States Constitution.  The best legal argument offered by the plaintiff class is that most of the changes will occur in the northern reaches of the county, which is predominantly Black.  And since closures entail disruption, and disruption is a burden, the Black students will bear the burden of these changes.

However, the facts do not support this objection.  Five Points School is racially balanced, but composed of a majority of white students.  No party or attorney has articulated any argument showing how the closing of Five Points School disproportionately burdens Black students.  Lafayette Lanier Elementary School is racially balanced.  No party or attorney has articulated any argument showing how the closing of Lafayette Lanier Elementary School disproportionately burdens Black students.  J.P. Powell Middle School is composed of mostly Black students, but these

students will only suffer the disruption of relocating to Eastside Elementary School, one mile away.  No party or attorney has explained how this inconvenience would be a disproportionate burden when compared to the relocations required by the closing of Five Points School or Lafayette Lanier Elementary School.  Eastside Elementary School is composed of mostly Black students, but these students will only suffer the disruption of added students on campus.  Schools in Valley will similarly have to accommodate new students on campus when Lafayette-Lanier Elementary School is closed.  No party or attorney has explained how the disruption at Eastside will outweigh the disruption at the Valley elementary schools.

Deterioration of the buildings, declining enrollment, and many other factors have compelled the Board to make a change.  Nearly every public comment agreed that conditions at several of the schools were "deplorable."  There is no evidence that the Board acted with a racial motivation or that the plan places a disproportionate burden on Black students.  The court sincerely appreciates the comments from the public and the arguments of counsel, but there is no aspect of this plan that violates the United States Constitution.  Instead, it appears that the parties, after extensive negotiations, have crafted a well-reasoned plan that should eventually lead to unitary status and an end to this case when its terms are fully implemented.  The need for more detail and public comment as to some portions of the plan should not imply any weakness in the fundamental terms of the plan.

Members of the public have raised concerns with how the Board has conducted itself during this process, taking issue with a lack of transparency and a premature announcement of school closures.

First, to address transparency:  The parties' agreement lies at an intersection between modern litigation and representative democracy.  In modern litigation, most cases are resolved through negotiation between parties, which necessarily occurs in a non-public setting.  Even though the Board is accountable to the public of Chambers County, the United States is accountable to the public of the nation, (and, though not elected, counsel for the private plaintiffs are accountable to the Black children of Chambers County and their parents/guardians), negotiations had to occur without all the constituents present in the room.  By the nature of the process, not every citizen who is or will be impacted by the settlement can be consulted to weigh in on the particular plan being discussed.

The attorneys, the Board, and the United States face the unenviable and impossible task of trying to please everyone.  But someone has to make a decision— or else this sixty-year-old case would last for another sixty years.  A public hearing on the initial steps in the overall plan is wise after the fact to ferret out any unconstitutional result of the negotiation.  Here, all parties were ably represented in the negotiation, and the result complies with those provisions of the Constitution that required the federal courts' intervention.

Finally, a legitimate concern was raised with respect to what appears to have been the premature closing of J.P. Powell Middle School and Five Points School before court approval had been conferred.  While the court does not condone any violation of its orders, the Board acted reasonably here for two reasons:  (1) All parties had agreed that the schools would be closed and the Board acted in reliance on that agreement; and (2) in order to effectuate the agreement, steps had to be taken before the end of the school year, including relocating personnel and equipment.

It is therefore ORDERED:

1.     The Motion for Immediate Relief (Doc. # 486) is GRANTED;

2.     Five Points School, J.P. Powell Middle School, and Lafayette-Lanier Elementary School may be closed immediately;

3.     Eastside Elementary School may be converted to a magnet school, and sixth-, seventh-, and eighth-grade children may be enrolled at the school immediately; and

4.     To the extent that court approval is required, permission is granted to operate a STEAM program at the Eastside Elementary School campus.

Recognizing that these school closures will begin the transition process ultimately required to end this case, it is further ORDERED that the Board shall establish a Desegregation Advisory Committee ("DAC") consisting of at least twelve total student and parent representatives from both the Valley and LaFayette

11

attendance zones. The DAC shall have regular access to the Superintendent and Board of Education to address the remaining desegregation issues and the progress of the changes to the District. The DAC shall be composed of three students from each attendance zone and three parents/guardians from each attendance zone. One parent member of the DAC shall be selected by the Private Plaintiffs, the remaining members shall be selected by the Superintendent. The DAC shall meet at least twice annually until this case as against the Chambers County Board of Education is closed. The DAC shall provide a summary of each meeting to all parties within thirty days of each meeting. The Board shall maintain and preserve all DAC meeting agendas, minutes, exhibits, and transcripts until this case is closed.[3]

DONE this 5th day of July, 2022.

_____/s/ W. Keith Watkins_____
UNITED STATES DISTRICT JUDGE

---

[3] This, too, is language that all parties have agreed to in substance. (Doc. # 480-1 at 2–3.)