# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY T. LEE, et al., | |
| Plaintiffs, | |
| and | |
| UNITED STATES OF AMERICA, | CIVIL ACTION NUMBER |
| Plaintiff-Intervenor, | 3:70-cv-00844-WKW |
| v. | |
| CHAMBERS COUNTY BOARD OF EDUCATION, et al., | |
| Defendants. | |

## PLAINTIFFS' STATUS REPORT AND MOTION FOR STATUS CONFERENCE

Private Plaintiffs, Anthony Lee, *et. al.*, file this status report to provide an update to the Court on events that have occurred between the June 30, 2022 public hearing and the present. The Private Plaintiffs state:

1. **STEAM Instruction at Eastside Elementary School**: The District has employed an Elementary and Secondary STEAM specialist and has engaged a contractor to develop and teach the STEAM curriculum to the District's teachers. Despite these investments, the STEAM instruction time provided to students at Eastside is severely limited. Currently, STEAM instruction takes place for only ten minutes at the beginning of class one day a week, on Wednesdays, for students in the fourth through eighth grades at Eastside. The District has represented that in October 2022, STEAM programming

provided by the youth development organization 4-H will be offered every other week. The District has provided a description of the fourth and fifth grade curriculum that will be taught during the first year of the 4-H STEAM program. It is unclear how the 4-H STEAM curriculum will be integrated into the current curriculum being developed by the District's STEAM contractor. The District's STEAM program appears to currently be comprised of STEAM activities without connection to any overarching STEAM goals. The Director of Curriculum and Instruction for K-8 reported that, to date, four (4) white students have transferred to Eastside to participate in the STEAM program. Private Plaintiffs do not agree that ten minutes a week of science activities constitute the creation of a STEAM magnet program. While it is understandable that the creation of successful academic programs takes time, Private Plaintiffs are concerned regarding the current state of the program and whether it will be successful enough to draw a desegregated enrollment at Eastside Elementary School.

2. **Desegregation Advisory Committee**: The District has completed its process for selecting community members to serve on the Desegregation Advisory Committee (DAC) and the Committee held its first meeting on Tuesday, September 20, 2022. Counsel for the Private Plaintiffs and Plaintiff Intervenor, United States of America, attended the beginning of the first meeting virtually. To the Private Plaintiffs' knowledge, the DAC has primarily focused on the logistics of committee formation and operation to date.

3. **Problems with Access to JROTC Program**: At the beginning of this school year, members of the LaFayette community reported that LaFayette High School students were not being permitted to enroll in the new Junior Reserve Officers' Training Corps (JROTC) program at Valley High School at the directive of multiple District representatives. Counsel for Private Plaintiffs inquired about the issue with Counsel for the District. It was only after this inquiry that students at LaFayette High School were enabled to enroll in JROTC. The arbitrary and unfair ban on LaFayette High students from the JROTC program, no matter how short-lived, has likely resulted in several LaFayette High students being unable to access a program that must be made equally available to all students in the District.

4. **Inadequate Gym Access at Eastside Elementary School and LaFayette High School:** As a result of the closure of the J. P. Powell Middle School building, middle school students are now housed at Eastside Elementary School, where the gym cannot accommodate them. Middle school students must walk down the street to LaFayette High School's gym for physical education. LaFayette High School students lose access to the gym during these times.

5. **Additional Requests for Information Issued to the District**: Private Plaintiffs issued a Request for Information (RFI) to the District on July 29, 2022, seeking details about various plans for the upcoming 2022-2023 academic year and updated data related to the District's efforts to desegregate. As of this filing, the majority of information requested has not been provided, though the District has produced a portion of the requested information. The District has also communicated its ongoing

effort to provide the information requested. Notably missing from the District's written responses is information about the District's plans to pursue a consolidated high school.

6. **Status of Consolidated High School**: Although the District has not yet provided any written information to the Plaintiffs regarding its plans for a consolidated high school, it has taken several steps that demonstrate it has a plan to pursue such a school:

    a. On September 12 and 13, 2022, the Board held "High School Site Selection Townhall[s]," advertised as "a discussion about where the new high school should be built!" The September 12 meeting took place at the Eastside Elementary Cafeteria in LaFayette; the September 13 meeting took place at the Valley Community Center in Valley. These meetings were scheduled only after Private Plaintiffs and the United States requested a site visit to observe the District's STEAM program and the United States requested to host two "listening sessions"—one in LaFayette and one in Valley, while in the county.

    b. The meetings included a presentation of the District's analysis of two potential high school sites by Tracy Richter of Hoar Program Management (HPM) (Exhibit A "Chambers County School District Site Selection Community Meeting September 12th & 13th, 2022"). The presentation was not shared with Plaintiffs' counsel with meaningful notice for input, nor did the District collaborate with Plaintiffs on its contents.

c. All parties attended both meetings, during which community members on both sides raised numerous questions indicating confusion about the District's analysis. These comments included:

   i. Questioning the metrics used to compare the two sites and noting the omission of critical datapoints including student socioeconomic and disability status.

   ii. Questioning the accuracy of projected transportation times for students living at edges of this geographically vast county.

   iii. Noting the multiple metrics listed as "Researching" on the "Site Comparison" chart *(Id.* at 8), attendees questioned why the District had not waited until it had completed its investigation to present its findings to the public. The public further questioned whether the District's proposed date to vote on a site, October 26, 2022, would be enough time for district to finish its research.

   iv. Noting that no central site locations were considered. In response, Superintendent Chambley stated he was advised not to discuss any consideration of other sites.

   v. Questioning whether the District had obtained funding for the construction of the new high school. Superintendent Chambley responded that the District is in "great financial shape" to borrow money, but did not provide concrete details.

vi. Expressing interest in a single meeting for the entire county, as opposed to separate meetings in LaFayette and Valley.

vii. Expressing concerns about traffic near Site 2, noting that there are already challenges with school drop off and pick up at the nearby W.F. Burns Middle School and the increased population growth in that area.

viii. Questioning how and when the District will make decisions about time zone for the consolidated high school and District as a whole.

ix. Expressing concerns about disproportionate burden on racial minorities.

x. Noting that schools were recently closed in LaFayette, and that Valley already has more schools than LaFayette; thus, whether it would be fair to place another school in Valley while further burdening students living in LaFayette and the northwestern portion of the county.

d. Several aspects of the presentation seemed to indicate the District's bias for the Valley site (Site 2) over the LaFayette site (Site 1). The "Site Comparisons" chart (*Id*. at 8) showed "Yes" answers in the Site 2 column highlighted in green, while "Yes" answers in the Site 1 column were not similarly highlighted. Several metrics for Site 1 were indicated as "Researching." When asked about this label, Mr. Richter responded that HPM had been unable to access data about portions of the LaFayette site. However, LaFayette city council members and the Mayor of LaFayette in attendance stated that they had not been contacted regarding access or information needed by HPM.

e. Community responses to the District survey requesting input on the site selection also expressed concerns about bias including: "Why is site 1 [LaFayette] presented so badly?" (Exhibit B "Chambers County Site Selection Survey Report," at 2); "When will all this information be gathered to compare both sites fairly" (*Id.*); "If you aren't going to give facts for both sites and present them both fairly, then why waste people's time or insinuate everyone's opinion matters" (*Id.* at 3); "Why has there been more research on this site [LaFayette] than the other? Why is this being presented differently?" (*Id.* at 5); "Presentation is key and you all did your best to show site 2 [Valley] is worthy of a school and it should go there, but show us REAL FACTS & REAL COMPARISONS." (*Id.* at 6) (emphasis in original); "Chambers County BOE will not present the information fairly for both sites and will continue to do business how they've imagined it to work" (*Id.* at 7).

Though the District contends that it has taken steps aligned with honoring its obligations under its school desegregation obligations, the Private Plaintiffs and community at large continue to have concerns regarding the District's thoughtfulness behind its actions, the pace at which it is proceeding, and whether it is operating in a manner that affords Black school children in Chambers County meaningful access to equal educational opportunities as required by the United States Constitution.

WHEREFORE, for the reasons stated above, the Private Plaintiffs respectfully request that the Court schedule a status conference so that the parties may discuss the issues raised in this report.

Dated: October 7, 2022                                    Respectfully submitted,


STANLEY F. GRAY                           /s/ GeDá Jones Herbert
ASB-8670-A56S                              GeDá Jones Herbert
Gray, Langford, Sapp, McGowan,             Amia Trigg*
Gray, Gray & Nathanson                     Victor Jones*
Post Office Box 830239                     Amber Koonce*
Tuskegee, AL 36083-0239                    NAACP Legal Defense &
Telephone: (334) 727-4830                  Educational Fund, Inc.
sgray@glsmgn.com                           700 14th Street NW, Suite 600
                                           Washington, DC 20005
                                           Tel: (202) 682-1300
                                           Fax: (202) 682-1312
                                           gherbert@naacpldf.org
                                           atrigg@naacpldf.org
                                           vjones@naacpldf.org
                                           akoonce@naacpldf.org


                                           *Admitted *Pro Hac Vice*




*COUNSEL FOR PRIVATE PLAINTIFFS*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Status Report and Motion For Status Conference has been delivered to all counsel via the Court's electronic filing system on this 7th day of October 2022.

/s/ GeDá Jones Herbert
GeDá Jones Herbert
NAACP Legal Defense &
Educational Fund, Inc.
700 14th Street NW, Suite 600
Washington, DC 20005
Tel: (202) 682-1300
Fax: (202) 682-1312
gherbert@naacpldf.org
