# Exhibit 1



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ANTHONY T. LEE, et al.,                    )

          Plaintiffs,                    )

UNITED STATES OF AMERICA,                  )

          Plaintiff-Intervenor           )
          and Amicus Curiae,             )

NATIONAL EDUCATION                         )
ASSOCIATION, INC.                          )

          Plaintiff-Intervenor,          )

vs.                                        )

CHAMBERS COUNTY BOARD OF                   )
EDUCATION, et al.,                         )
          Defendants.                    )

**FILED**

**JUL 1 - 1993**

CLERK
U.S. DIST COURT
DLE DIST OF A
CLERK, E

CIVIL ACTION NO.

844-E

## AGREED ORDER

### I.   BACKGROUND

On September 16, 1991 this Court entered an Order to which the parties had agreed, resolving the issues raised by the school district's August 27, 1991 Petition for Emergency Relief.  The 1991 Order approved the school closures, grade consolidations and student reassignments that the school district had proposed "as an interim plan for the 1991-92 school year"[1] while also requiring the district to "conduct a long-range study of its system."  The Order required the district to "review the attendance zones of all of its schools and make recommendations to desegregate those schools which

---

[1]That plan was continued in effect during the 1992-93 school year without objection from the other parties.

continue to exist as disproportionately black schools." The Order also contained provisions dealing with student transfers, teacher and staff assignments, curriculum and counseling equalization at LaFayette and Valley High Schools and the elementary schools of the system, modification of the Five Points school facilities, and efforts to improve the image of LaFayette High School.

The school district employed a team of consultants to conduct the long-range study required by the September, 1991 Agreed Order. After reviewing the report prepared by the consultants, the district in June of 1992 filed with the Court a motion for permission to implement a proposal to close and consolidate certain school facilities and to restructure the grades offered at some of the remaining facilities, and to make modifications in attendance zones reflecting these changes. Plaintiffs and the United States filed responses to this motion indicating reservations and concerns about the adequacy of the proposal to satisfy the district's obligation under the 1991 Agreed Order. Before the parties and their counsel could meet to discuss these concerns in any detail, issues in this litigation relating to the proposed formation of a separate Valley City School District were reactivated when the Attorney General granted preclearance under § 5 of the Voting Rights Act of 1965 to the City of Valley's establishment of a separate system.

## II. <u>INTERIM AGREEMENT</u>

On May 5, 1993 trial proceedings in this matter commenced on the issues of (i) the City of Valley's request to operate a separate school system, (ii) the Chambers County Board of Education's motion to implement its proposal, and (iii) the contentions of plaintiffs and the United States concerning the need for further relief to eliminate continuing vestiges of past discrimination and segregation in the schools of Chambers County. The plaintiffs, the United States, and the Chambers County School District have continued to discuss their differences with respect to the second and third issues described above and have reached an agreement which resolves those issues in part on an interim basis, and which commits these parties to further consultation and negotiation toward their more permanent resolution. As part of this agreement, the district withdraws, without prejudice, the motion which it filed in June, 1992 for permission to implement the student assignment changes and school closures described in the motion.

In arriving at the agreement embodied herein, the school district does not admit any noncompliance with the prior Orders of this Court, including the 1991 Agreed Order, or any noncompliance with any requirements of law; nor does its consent to this Order constitute an admission (nor evidence supporting a finding or conclusion) of noncompliance with prior Orders of the Court. By agreeing to this Order, none of the parties plaintiff or defendant

- 3 -

shall in any way be precluded from relying upon any evidence introduced in the present trial proceedings in connection with any motion or other request for relief that may subsequently be filed with the Court in accordance with the terms of this Order.

The Court has reviewed the signatory parties' agreement in light of its prior Orders and the pleadings filed by the parties in preparation for the trial proceedings that have been conducted and finds that the provisions to which the signatory parties have agreed are consistent with the school district's obligations under its desegregation plan and under the law. Accordingly, that agreement is approved, and in accordance with the agreement of the signatory parties that an order be entered with the following terms, it is hereby ORDERED as follows:

1. Effective for the fall semester of the 1993-94 school year, the school district shall close the Chambers County High School at Milltown, currently serving grades K-8,[2] and reassign its students[3]

_____

[2] The district shall not dispose of facilities or property at the Milltown site once the school has been closed until after the expert review has been completed and any expert recommendations have been made (see infra paragraph 4), and the Court either has approved the agreement of the signatory parties as to those recommendations or has resolved any disputes presented by the parties with respect to those recommendations.

[3] Faculty and staff who were assigned to the Chambers County High School in the 1992-93 school year shall be reassigned for the 1993-94 school year to vacancies in other schools in the system in a manner which, to the greatest extent feasible, helps to bring the racial composition of faculty and staff at all Chambers County School District facilities within the range from ten percentage points below to ten percentage points above the district-wide ratio,

(continued...)

in the following manner:

> a. Pupils in grades K-8 who reside at locations served during the 1992-93 school year by bus route 87-4 or by bus route 87-5 shall be assigned to Five Points Elementary School.

> b. Pupils in grades K-3 who reside at locations served during the 1992-93 school year by bus route 86-1 or by bus route 92-10 shall be assigned to Eastside Elementary School.

> c. Pupils in grades 4-8 who reside at locations served during the 1992-93 school year by bus route 86-1 or by bus route 92-10 shall be assigned to Southside Elementary School.

Following issuance of this Order, the district shall establish geographic attendance zones for the Five Points Elementary School, the Eastside Elementary School and the Southside Elementary School for the 1993-94 school year that are consistent with these reassignments.[3]  The district shall also take all feasible steps,

---

[3](...continued)

see infra ¶ 4.3., and which, to the greatest extent feasible, equalizes the distribution of staff with higher levels of state certification among the school facilities of the district, see id. & n.10.

[4]The district shall, during the 1993-94 school year, review the attendance zones for these schools based upon updated pupil residence information and projected 1994-95 student returns from out-of-district attendance and shall redraw the zones as may be necessary to maximize desegregation. A description of the modified zones, along with projections of school enrollments expected to result from their adoption, shall be furnished to counsel for the plaintiffs and for the United States no later than April 1, 1994 for implementation in the 1994-95 school year.  If either plaintiffs or the United States objects to the proposed zones, they shall confer with the district in an effort to resolve any differences. If agreement cannot be reached, the parties shall file

(continued...)

including but not limited to the redrawing of routes and the addition of another bus if practicable, to reduce the additional travel time for pupils reassigned from Chambers County High School to other schools pursuant to this Order.

2. If the Court determines that formation of a separate Valley City School District should not be permitted at this time, effective for the next school year which begins more than sixty (60) days following issuance of the Court's ruling, the school district shall close the Lafayette-Lanier (Langdale) Elementary School and reassign students residing in areas currently assigned to that facility to Bob Harding (Shawmut) Elementary School, Fairfax Elementary School, or Huguley Elementary School in a manner which increases, to the greatest extent practicable, the level of desegregation in each of those schools.[5]

---

[4](...continued)

a report with the Court no later than April 20, 1994 outlining their differences and indicating whether any party believes that a hearing will be necessary, in order that the Court may resolve the disputed issues in advance of the beginning of the 1994-95 school year.

[5]The district shall furnish to counsel for plaintiffs and for the United States, no later than 45 days prior to the beginning of the school year in which the Lafayette-Lanier (Langdale) Elementary School shall be closed in accordance with this Order, information reflecting the proposed zone lines for Harding, Fairfax and Huguley Elementary Schools and projections (based on the previous year's enrollments) of enrollments for the coming school year at each of those facilities. If either plaintiffs or the United States objects to the proposed reassignments they shall confer with the district in an effort to resolve any differences. If agreement cannot be reached, the parties shall file a report with the Court, no later than 30 days prior to the beginning of the school year,

(continued...)

3. The school district shall continue to enforce the policies on intra-district and inter-district transfers[6] which it developed and adopted pursuant to the 1991 Agreed Order.  The signatory parties and the Court recognize that the plaintiffs have recently filed pleadings seeking to join several school districts adjoining Chambers County as additional parties defendant for purposes of relief and have indicated their intent to seek injunctive decrees restraining such school systems from enrolling students residing within Chambers County if such enrollment would reduce desegregation either in the Chambers County school[s] that the pupils would otherwise attend or in the receiving school[s].

4. The signatory parties agree that it is desirable for the district to develop a comprehensive desegregation plan[7] that could be implemented without significant delay by the Chambers County School District if the Court determines that formation of a

---

[5](...continued)
outlining their differences and indicating whether any party believes a hearing will be necessary, in order that the Court may resolve the disputed issues in advance of the beginning of the school year.

[6]The signatory parties agree to confer with respect to any comments or suggestions which plaintiffs or the United States may make, no later than July 20, 1993, for modification or additions to the district's policy and procedures for transfers.  If agreement cannot be reached, the parties shall file a report with the Court outlining their differences no later than August 3, 1993, indicating whether any party believes a hearing will be necessary, in order that the Court may resolve the disputed issues in advance of the beginning of the 1993-94 school year.

[7]With respect to student assignment, the objective of the plan shall be to desegregate the district's schools to the greatest extent practicable.

- 7 -

separate Valley City School District should not be permitted at this time, after receiving recommendations of educators with experience and expertise in school desegregation who have studied the circumstances and conditions in the Chambers County School District. For this purpose, the district may, if it so desires, designate an expert of its choosing to work with Dr. Larry Winecoff and/or another consultant retained by the United States in this litigation, to develop such recommendations. The district shall cooperate with and assist the[se] expert[s] by providing information and data about the Chambers County school system which [t]he[y] may request in order to formulate recommendations for such additional actions as [t]he[y] may conclude are necessary and appropriate to complete the desegregation of the Chambers County School District, and to ensure that minority students in the district are provided equal educational opportunities in all respects. The plan shall include (but need not be limited to) the following components:

a. Student assignment. As stated above, the plan shall be designed to achieve the greatest possible degree of desegregation consistent with the practicalities of the district's circumstances, utilizing methods such as alterations in attendance zone lines, grade structure, or use of facilities.

b. Bus routes. The expert[s] shall review current routes and demographic patterns in the areas served by current routes, and shall make recommendations for modifications that

may be necessary to equalize transportation burdens for black and white students and to insure that school buses are operated on a fully desegregated basis.

c. <u>Facilities and equipment</u>. Based upon (i) an assessment of the current physical condition of the various school facilities operated by the district (including matters such as structural soundness, adequacy of heating/cooling systems, plumbing and sanitary facilities, etc.), and (ii) identification of repairs, renovation, new construction or significant maintenance that is currently necessary[8] to bring all facilities within the district to acceptable -- and, to the extent feasible, equal -- levels of physical condition and suitability for the educational programs which each school is to offer,[9] the expert[s] shall make recommendations for and the district shall prepare an appropriately prioritized plan for meeting the identified needs. Similarly, based upon an inventory of equipment available at each school facility to support the educational process (including but not limited to computer hardware, software and related peripheral equipment, audiovisual, scientific or demonstrative equipment and

_____

[8]The district agrees that in scheduling future non-emergency maintenance, repairs, renovation, or construction it shall take into account the extent to which maintenance, repair, renovation or construction needs identified in this process remain to be met at the various schools in the system, and that it shall give priority to schools with the greatest unmet needs.

[9]In identifying maintenance, renovation and construction needs, appropriate consideration shall be given to the provisions for equalization of curricular offerings (including remedial, gifted or other special programs) contained in this Order.

- 9 -

materials,[10] recreational equipment, uniforms, gear, materials or other supplies necessary for school-sponsored extracurricular activities), the expert[s] shall make recommendations for and the district shall prepare an appropriately prioritized plan for eliminating disparities in the quantity or quality of equipment available at the various schools within the district, including, when the operation of school facilities is discontinued as provided for by this Order or otherwise, through reallocation of district-purchased equipment.[11]

d. <u>Faculty and staff selection and placement</u>. After considering any recommendations of the expert[s], the district shall develop (i) criteria and procedures for nondiscriminatory hiring, assignment, promotion and transfer of faculty, staff and central office personnel, including adequate announcement and notification to potential applicants of vacancies in existing positions, or of newly created positions, within the school system; and (ii) objective criteria for selection of personnel to be affected by any reductions in force made necessary by school closings, consolidation or similar changes in facility utilization that are made for the purpose of achieving or increasing the

---

[10]Recommendations in this area shall take into account, to the extent appropriate, the technology plan which the district is currently developing.

[11]This plan shall take into account the provisions for equalization of extracurricular offerings contained in this Order.

- 10 -

desegregation of the schools in Chambers County. Additionally, with the assistance of the expert[s], the district shall identify teacher training and similar educational institutions which are potentially promising sources of minority applicants for teaching and other professional positions within the Chambers County School District.[12]

e. <u>Faculty and staff assignment</u>. After considering any recommendations of the expert[s], the district shall develop or revise its policy and procedures to assure (i) that faculty and professional staff (teachers, teacher aides, counselors, librarians, etc.) at each Chambers County school reflect the district-wide racial ratio, plus or minus ten percentage

---

[12]The district agrees to develop and implement a faculty and professional staff recruiting plan including regular contact with, and provision of timely information about employment opportunities within the school system to, such institutions.

The district further agrees to retain, for a period of three (3) years after the events, records reflecting or documenting: its faculty and staff recruitment efforts; all vacancies which occurred in faculty, staff, other professional positions (including central office positions) and non-certificated positions within the system; the race, sex, certification, academic degrees held, and prior experience, date of application and of interview (if any) for each applicant; and the disposition of each applicant (<u>e.g.</u>, hired, not hired, promoted, not promoted, etc.), and to make such information (excluding personally identifying information) available upon request by plaintiffs or the United States. The district also agrees to retain on a confidential basis, without public disclosure, for the same period of time, information indicating the reason why each unsuccessful applicant was not selected for the vacancy for which application was made; this information shall be subject to disclosure to any of the other parties to this lawsuit only pursuant to an Order issued by the Court.

- 11 -

points;[13] and (ii) that faculty and professional staff are assigned to Chambers County schools in a manner which, to the extent feasible (consistent with the availability of staff in particular areas of certification and the requirements of Alabama law regarding faculty and staff qualifications) avoids the concentration of faculty or staff with higher state certification in particular schools or groups of schools.[14]

    f. <u>Curriculum</u>.  Based upon a comprehensive curriculum audit of courses offered to pupils in the Chambers County School District (in particular at the secondary grade levels) to determine what differences in nomenclature or in substance currently exist in the district, and with the assistance of the expert[s], the district shall develop policy and procedures, including provision for periodic review by the

---

[13]See <u>Singleton v. Jackson Municipal Separate School District</u>, 419 F.2d 1211, 1217-18 (5th Cir. 1969), <u>rev'd in part on other grounds sub nom. Carter v. West Feliciana Parish School Board</u>, 396 U.S. 226 (1970).

[14]The district recognizes that disparities in both racial composition of faculty and staff and also in qualifications (as is reflected in the proportion of faculty and professional staff at each school who have Class B, Class A and Class AA certification, respectively) currently exists in the Chambers County school system.  The district agrees to take steps, consistent with provisions of Alabama law respecting teacher tenure, prior to the 1993-94 school year to reduce these disparities by (a) filling vacancies wherever possible in a manner which reduces or eliminates such disparities, (b) soliciting voluntary transfers of faculty or staff that would reduce or eliminate such disparities, and (c) reassigning faculty and staff from facilities that, under the terms of this Order, are to be closed effective for the 1993-94 school year in a manner which reduces or eliminates such disparities.  The district further agrees that it will make whatever additional transfers or reassignments may be necessary to eliminate such disparities to the greatest extent feasible by the 1994-95 school year.

- 12 -

Superintendent and the implementation of corrective measures
if necessary, to assure that all students attending the public
schools of Chambers County are made adequately aware of and
have equal opportunities to take advantage of all curricular
offerings (including special advanced courses, remediation
courses, elective offerings, gifted programs, etc.) available
in the school system.[15]

To assist in achieving this objective, the plan of the
district shall provide that, at least 30 days prior to the
beginning of the course registration period in the spring of
each school year, the district shall prepare and distribute to
all parents of high school students a notice listing all high
school courses offered at each high school facility which it
operates.  The notice shall also explain the different levels
of courses (e.g., advanced, basic, gifted, college

_____

[15]The district agrees to continue its efforts to standardize
course titles as used in master schedules, handbooks and
informational materials made available to parents and to students
attending different schools in order to avoid the appearance or the
actual occurrence of curriculum inequalities and disparities.

The district also agrees that the Superintendent shall review
junior and senior high school student handbooks and require their
revision as may be necessary to insure that all students in the
system are made aware of curricular offerings throughout the
district, including special programs such as gifted education, etc.
The signatory parties recognize that it may not be feasible to
teach all courses at all locations to small numbers of students and
that the fact that a course is not taught at every school in every
year does not establish that students at a school at which it is
not taught were not offered the opportunity to enroll in the course
if there were sufficient demand.  The district agrees to explore
and to utilize alternative means of accommodating limited demand
(such as through the use of itinerant teachers or the transpor-
tation of students to another school for the course offering) where
possible.

- 13 -

preparatory) and the educational objectives of each type of course.  If in any school year, the district teaches a course at one high school and does not teach it at another, a complete list of such unduplicated courses shall be prepared and a copy provided to counsel for the plaintiffs and for the United State within ten (10) days after student course selections have been made and the district has determined which courses will be taught during the forthcoming school year.

g.   <u>Extracurricular   activities</u>.   Based   upon   a comprehensive audit of extracurricular activities, programs, clubs, etc. available to students under school district sponsorship throughout the system, the expert[s] shall make recommendations for such changes as may be necessary to assure that all students attending the public schools of Chambers County have equal opportunities to take advantage of extracurricular activities available in the system.[16]

h.   Gifted program.   The expert[s] shall review the forthcoming revised regulations of the Alabama State Department of Education regarding gifted education programs and the policies and procedures currently being utilized in the Chambers County School District in the operation of the

_____

[16]The signatory parties recognize that it may not be feasible to offer the same extra-curricular activities at all locations to small numbers of students, and that the fact that an activity is not offered at every school in every year does not establish that students at a school were not offered the opportunity to participate in the activity if there were sufficient demand.

program, as well as techniques developed in other jurisdictions to increase the pool of minority students identified for assessment and participation in the program and shall make appropriate recommendations to the district for modifications in the operation of its gifted program.[17]

i. **Majority-to-minority transfers**.  The expert[s] shall review the adequacy of procedures for notifying students and parents of students in the Chambers County School District of the availability of majority-to-minority transfers with free transportation[18] and shall make such recommendations to the district for modifications as are appropriate in light of this review.

j. **Long-range planning**.  The expert[s] shall review school construction needs, see **infra** paragraph 5. Counsel for the signatory parties shall consult and confer to consider the recommendations which may be made by the expert[s] and the plan developed by the district, and they shall seek to reach agreement regarding any modifications and regarding implementation.

---

[17]The district recognizes that black students historically have been and currently are substantially underrepresented in the gifted program.  The district agrees to increase its efforts to make parents and students aware of the program (see **supra** note 15) as well as to promote awareness of the program among faculty and staff at all schools; to train and to encourage faculty and staff at all schools to identify and refer for screening black pupils who are potentially eligible for the program; and to act affirmatively to assure and to increase the accessibility of the program to pupils attending schools other than those in the Valley area.

[18]**See Carr v. Montgomery County Board of Education**, 429 F.2d 382 (5th Cir. 1970); **Swann v. Charlotte-Mecklenburg Board of Education**, 402 U.S. 1, 26-27 (1971).

The parties shall report to the Court on their progress by December 1, 1993. If agreement is reached, the parties shall present their recommended plan to the Court for its consideration should the Court determine that formation of a separate Valley City School District should not be permitted at this time. If no agreement can be reached within 60 days following the issuance of such a determination by the Court, the parties shall report their differences to the Court so that such further proceedings as are necessary in this matter may be conducted by the Court and delay in implementing further steps to desegregate the District can be minimized to the extent practicable.

5. If the Court determines that formation of a separate Valley City School District should not be permitted at this time, the district agrees to support the construction and operation of a consolidated, district-wide high school facility at a site readily accessible to Alabama state highway Route No. 50 between Lanett and LaFayette. No later than one year following issuance of such determination by the Court, the Chambers County Board of Education shall request from the County Commissioners of Chambers County such additional revenue measures as may be necessary to support the issuance of bonds or otherwise to finance the construction of such a district-wide high school. The district will inform the other signatory parties of the disposition of such request[s].

6. The district agrees to continue its efforts to improve the image of LaFayette High School as required by the 1991 Agreed

Order.   The district shall develop a proposal for accomplishing
this objective and shall submit it to counsel for the plaintiffs
and for the United States no later than September 30, 1993.

7.   The district shall provide notice to counsel for the
plaintiffs and for the United States at least 30 days in advance of
undertaking any new school construction, or any renovation that is
designed to expand the classroom capacity or classroom size of any
school facility and that exceeds $5000 in cost.   If plaintiffs or
the United States objects within 15 days of receiving such notice,
the parties shall confer in an effort to resolve their differences.
If agreement cannot be reached, any party may apply to this Court
for appropriate relief; however, any construction or renovation
described above to which objection has been made shall not be
commenced (absent agreement of the signatory parties) until
approval of the Court has been secured.

8. The district shall include, in the report which it files
annually with the Court and serves upon the other signatory parties
(as required by the prior Orders of the Court), a description
(including identification of the school facility involved, the
nature of the work performed, and the actual cost) of other
renovations and non-emergency maintenance or repairs[19] to any

_____

[19]The term "non-emergency maintenance or repairs" does not
include repairs or maintenance necessitated by deterioration of or
damage to a building's major structural components, heating,
cooling or electrical systems (except for construction intended to
upgrade otherwise functional heating, cooling or electrical
systems), plumbing, hot water or sanitary facilities.

school facility.

9. Except insofar as they may be unavoidably inconsistent with the provisions set forth above, the prior Orders of this Court shall remain in effect.

### III. <u>CONSENT OF THE PARTIES</u>

The parties hereby consent to the form and content of this Agreed Order as indicated by the signatures of their counsel below:

For the United States:

JAMES P. TURNER
Acting Assistant Attorney General

NATHANIEL DOUGLAS, Esq.
FRANZ MARSHALL, Esq.
SABRINA WHITEHEAD JENKINS, Esq.

For the National Education
Association, Inc.:

SOLOMON S. SEAY, Esq.

For the Plaintiffs, Anthony T.
Lee, et al.:

SOLOMON S. SEAY, Esq.

JANELL M. BYRD, Esq.

For the Chambers County Board
of Education:

ROBERT T. MEADOWS, III, Esq.

ORDERED and APPROVED this _1st_ day of _July_, 1993.

UNITED STATES DISTRICT JUDGE

- 18 -