**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY T. LEE, et al.,          ) | |
| )| |
| Plaintiffs,          ) | |
| ) | |
| UNITED STATES OF AMERICA,          ) | |
| ) | |
| Plaintiff-Intervenor and          ) | |
| Amicus Curiae,          ) | CIVIL ACTION NO.:  3:70-cv-844-WKW |
| ) | |
| NATIONAL EDUCATION ASSOCIATION,          ) | |
| INC.,          ) | |
| ) | |
| Plaintiff-Intervenor,          ) | |
| ) | |
| v.          ) | |
| ) | |
| CHAMBERS COUNTY BOARD OF          ) | |
| EDUCATION, et al.,          ) | |
| ) | |
| Defendants.          ) | |

**DEFENDANTS' MOTION FOR APPROVAL OF SITE
FOR NEW CONSOLIDATED HIGH SCHOOL, FOR APPROVAL TO BUILD THE
NEW HIGH SCHOOL AND FOR AUTHORIZATION TO TEMPORARILY
CONSOLIDATE HIGH SCHOOL STUDENTS**

COME NOW the Defendants, the Chambers County Board of Education (hereinafter sometimes referred to as "Defendants" and sometimes "Board") by and through their undersigned attorney, and respectfully move this Honorable Court (after a hearing hereon and after receiving public comment) to approve the site selected by the Board for the new consolidated high school, to approve the building of the new high school and to authorize the temporary consolidation of all high school students at the existing Valley High campus beginning in August 2023 and continuing until the new school is complete. As grounds for said Motion, the Defendants show unto the Court the following:

1

1. This case was initiated approximately fifty (50) years ago to remedy the dual de jure school system that was then in operation throughout the State of Alabama and by this Board.

2. By Orders of March 22, 1967, the Lee vs. Macon County Court ordered the State Superintendent of Education to require that the Board, along with numerous other school districts, desegregate schools. The Comprehensive Orders included provisions for desegregation of faculty, students, facilities, transportation and other areas deem necessary for effective desegregation.

3. On February 12, 1970, the Board was ordered to implement its desegregation plan for the complete disestablishment of the dual system effective with the 1970-71 school year. In that order, the Court entered a "Singleton" Order setting forth the terms and conditions under which the Board was to immediately desegregate.

4. Over the years, certain actions have been taken with respect to student assignment in the schools. For example, there have been certain schools closed and their student populations rezoned to attend other schools and there have been schools which have been paired to further desegregation.

5. In 1993, this Court entered an Order in which among other things, the Board agreed to support a new consolidated high school for the county. That Order indicated that the new consolidated high school site should be "readily accessible" to Highway 50 between Lanett and Lafayette.[1] For various reasons throughout the years, mainly to do with finances associated with the building of a new high school, a new consolidated high school has not been built.

---

[1] The Board does not believe that the provision stating that the new high school site should be "readily accessible" to Highway 50 between Lanett and Lafayette is still operative. That Order is almost thirty (30) years old. The County and the school system demographics have changed dramatically over that period of time which make that provision outdated and no longer appropriate. Additionally, no party has taken the position until approximately a month ago that compliance with the provision about the accessibility to Highway 50 between Lanett and Lafayette is required. The Proposed Consent Decree attached to the Joint Motion to Approve the Proposed Consent Order filed in this Court made no mention of such a requirement. (Doc. 480) This notwithstanding, in the event that requirement is deemed to be applicable at this point in time, the Board submits that that provision is not feasible because sites along, or near, Highway 50 have been considered but they all have issues that the Valley site does not have.

6. Since the current Superintendent took over in January of 2021, the Board has moved steadily towards further desegregating the system.

7. All parties agree that a new consolidated high school is appropriate and should be built for the benefit of all the school children of Chambers County. This was recently reaffirmed in a proposed Consent Decree submitted along with a Joint Motion to approve it on May 19, 2022. (Doc #380).

8. On July 5, 2022, this Court also reaffirmed the concept of a consolidated high school (Doc # 493, at 5).

9. The Board has worked with experts to try to determine the most appropriate location for the new consolidated high school and to submit details regarding funding, etc. for the new school.

**SITE**

10. The City of Lafayette has offered to donate certain property located in Lafayette for this use. Approximately 52 acres of the property that Lafayette proposes to donate are owned in fee simple at the present time by the City of Lafayette; other acres which adjoin that 52 acres are the subject of options to purchase in favor of the City of Lafayette. All told, the City of Lafayette has indicated that it can provide at no cost to the Board approximately 164 acres.

11. The City of Valley has also offered to deed to the Board with no consideration land located in the City of Valley. This property includes approximately 73.75 acres and is owned in fee simple by the City of Valley.

12. The Board had a site comparison analysis of those two properties completed. That analysis covered infrastructure requirements such as available sewage at each site, electrical power access for each site, natural gas service availability for each site, water service for each site, and

needed road improvement projections for each site as well as costs of athletic facilities. The analysis also included available geotechnical reports on the Valley site, available environmental site assessments on the Valley site, available partial topographical surveys on the Valley site and available wetlands reports on the Valley site. These type reports which were provided by the City of Valley on its site were not available on the Lafayette site to our knowledge. The analysis also included property zoning requirements and existing easements on both sites. When these matters are considered, together with those matters below, the Valley site is superior to the Lafayette site.

13. The student distribution across the district was analyzed in order to project the transportation costs and the mileage for the 9th through 12th grade students to the Lafayette site and also to the Valley site. For example, generally one can expect to transport one/third of the students which attend a school. In this particular situation, using a cost of $5.00 per mile which includes costs for fuel, the driver, maintenance and the purchase price of the bus over a period of over 180 days of school, the estimated annual costs to transport 1/3 of all the high school students to Lafayette one-way would be $3,231,538.20. The costs to transport the same students to the Valley site one-way would be $1,970,802.90 annually. Taking this information and projecting a round trip for the students would show that the annual cost to the system to transport children to and from Lafayette would be $6,463,076.40, and to and from the Valley site would be $3,941,605.80. Thus, one can readily see the substantial difference in expense to the system for transporting students to the Lafayette site versus the Valley site.

14. In addition to the substantially higher costs for transporting students to the Lafayette High School, the analysis considered the distance the black students would have to travel on a daily basis. That report indicated that the black high school students in the entire district would travel 4,921 miles daily to Lafayette and those same students would travel 4,280.9 miles

daily to the site in Valley. Thus, the black students in the entire system would travel further to the Lafayette site than they would to the Valley site on a daily basis.[2]

15. On the other hand, the white high school students in the entire district would travel 5,311.8 miles daily to the Lafayette site and 2,135.1 miles to the Valley site, also substantially more miles daily to Lafayette than to Valley for the white students.

16. Additionally, the location in Valley adjoins a football stadium and the Valley Sportsplex which would serve the new school without the need (and cost) to construct new facilities.

17. In addition to the sites proposed to be donated to the school system by the cities of Lafayette and Valley, other sites in the County were considered. Specifically, sites in Cusseta, Alabama, in Fredonia, Alabama, and along Highway 50 which is the main artery connecting Lafayette in the northwestern end of the county to Valley in the southeastern portion of the county were considered. All of these sites have issues regarding their use when compared to the other two sites including availability of land, costs to purchase, road improvements necessary, sewage availability, power availability, appropriate water service and costs of athletic facilities, among others. Therefore, they are not the best sites for the new high school.

18. At its meeting on October 26, 2022, the Board approved the use of the Valley site for the new consolidated high school, SUBJECT TO this Court's approval, after a hearing and public comments.

19. The Board respectfully submits that when all the relevant factors are considered, this particular site is the best site for all students of Chambers County.

---

[2] There are currently 297 black students attending Valley High and 177 attending Lafayette High.

## **FUNDING**

20. The Board has engaged in discussions with several financial analysts and each of those has indicated that a new high school costing approximately 70 million dollars is well within the financial capability of the Chambers County Schools.

21. In addition to borrowing money, the Board has monies available from the PSCA (Public School and College Authority) fund in the approximate amount of 3 million dollars which can be utilized in this project. There may also be additional sums available to the Board from other local sources and from federal sources which can be utilized. Moreover, the Board's aggregate debt service has been declining through maturing debt and they have been saving funds as a result of the consolidation of current facilities for use in this project. By utilizing all of these sources and savings efforts, the Board is of the opinion that it can support a project of this magnitude without the need for new taxes.

## **TRANSPORTATION**

22. The Chambers County Board is in the process of preparing bus routes to transport students from the Lafayette area and from the Valley area to a new high school located on the proposed site. These bus routes will possibly utilize a number of different strategies to minimize the length of time that the children are on the bus whether they are in the Lafayette area or the Valley area. For example, the possibility of having bus routes going directly to the Valley site without the need to make stops at any of the schools in the Lafayette area or any of the other schools in the Valley area is being considered. In other words, there would possibly be buses designated solely for high school students. By eliminating the necessity to pick up students in the lower grades on the same buses that the high school students are on would reduce the number of

stops made by those buses and therefore reduce the amount of time these high school students would be riding.

### SCHOOL START TIME

23.     The high school proposed to be located in the Valley area will operate on Central Time.  The Superintendent of the Board has already had meetings with substantially connected people in the Valley area which is on Eastern Time to discuss this possibility.  Specifically, he has spoken with the Mayor of the City of Valley (who has publicly committed to supporting the central time zone), the individual in charge of the hospital in the area and other substantial business owners.  All of these individuals are working towards changing the time zone on which the Valley area operates from Eastern time to Central Time.  In the event that these individuals are not successful for whatever reason in having their various organizations and indeed the community at large from switching to Central Time, the Board is committed to starting the new consolidated high school on Central Time regardless.  This would enable the students who live on Central Time Zone and who are primarily in the Lafayette area to attend the new school without the problems associated with the time zone differences.

### TEMPORARY CONSOLIDATION OF HIGH SCHOOLS

24.     The Board plans to temporarily consolidate the two high schools for the school year 2023-2024 at the existing Valley High School Campus.  By doing so, there would be no students attending the current Lafayette High School campus which would enable the Board, as soon as it is financially feasible, to initiate refurbishments, renovations and additions to that facility to ultimately house the K-8 STEAM program currently located at Eastside Elementary School.  When these refurbishments, renovations and additions are complete, the "new" Lafayette High School campus would be an additional incentive for students from the Valley area in the K-8 grade range

to attend the STEAM program located there. However, in order to complete these additions at Lafayette High School, the students must be consolidated with the current Valley High School students at Valley High School so that there are no students at the existing Lafayette High when the work is being done. This consolidation would include a change in the name of the existing Valley High School along with its colors, its mascot, etc. so that there would no longer be a Valley High School nor a Lafayette High School but one high school with a new name, new colors, a new mascot, etc. which would be chosen between now and then. Therefore, the Board respectfully requests this Honorable Court to allow it to consolidate the existing Lafayette High School Students with the current Valley High School students at the existing Valley High School campus beginning 2023-2024.

## **CONCLUSION**

25. The Board respectfully requests this Honorable Court after a hearing and after receiving public comment to approve the site selection and allow the Board to proceed with the building of the new high school. Time is <u>critical</u> in this matter because based on the projections that exist, the Board needs to move as rapidly as possible in order to complete the new high school by the school year 2025/26 which is the goal. In addition, the Board respectfully requests this Court to allow the temporary consolidation of the high school students as set forth above. The Board respectfully requests such other, different, and general relief to which it may be entitled under the circumstances.

Respectfully submitted,

*/s/ Robert T. Meadows, III*
Robert T. Meadows, III
Attorney for Chambers County
Board of Education

**OF COUNSEL:**
**CAPELL & HOWARD, P.C.**
3120 Frederick Road, Ste. B
P.O. Box 1857
Opelika, Alabama 36803
Telephone: (334) 241-8011
Email: Bob.Meadows@chlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November 2022, I electronically served a true and correct copy of the foregoing document on all counsel of record in the above-captioned matter.

                                        */s/ Robert T. Meadows, III*
                                        OF COUNSEL