IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY T. LEE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor | ) | |
| and Amicus Curiae, | ) | |
| | ) | |
| and NATIONAL EDUCATION | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:70-CV-844-WKW |
| | ) | [WO] |
| CHAMBERS COUNTY BOARD | ) | |
| OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this longstanding school desegregation case originating in Chambers
County, Alabama, the Private Plaintiffs—once comprising black students and their
guardians in the Chambers County public schools—seek interim attorneys' fees and
costs. (Doc. # 597.) Defendant Chambers County Board of Education filed a
response (Doc. # 603), and the Private Plaintiffs replied (Doc. # 608). For the

reasons to follow, the court will grant in part and deny in part the motion (Doc. # 597) and award $358,000.00 in attorneys' fees and $2,450.95 in costs.[1]

## I.    DISCUSSION

The Private Plaintiffs request attorneys' fees totaling $402,625.00 for the legal services provided by their attorneys, Fred D. Gray and Stanley F. Gray.  This amount reflects 894.50 hours of work performed by the two attorneys from 1998 through 2023 as follows:

| Counsel | Hourly Rate | Hours | Amount |
|---|---|---|---|
| Stanley F. Gray | $450 | 892.50 | $401,625.00 |
| Fred D. Gray | $500 | 2.00 | $1,000.00 |
| **TOTAL** | | 894.50 | $402,625.00 |

The Private Plaintiffs also seek costs in the amount of $5,070.64 as follows:

| Category of Costs | Costs |
|---|---|
| Parking/Tolls | $46.00 |
| Taxi/Uber | $ 72.28 |
| Meals | $121.24 |
| Hotel | $1,037.76 |
| Air Travel | $436.96 |
| Photocopying | $375.00 |
| Depositions (transcriptions and court reporter attendance fee) | $2,075.95 |
| Mileage | $905.45 |
| **TOTAL** | $5,070.64 |

---

[1] The Chambers County Board of Education has been subject to federal desegregation orders for decades, and the court is well acquainted with the case's history.  That history will not be repeated here.

The court has discretion to award prevailing parties "a reasonable attorney's fee" and "costs" under 42 U.S.C. § 1988. As the Supreme Court has recognized, "[t]he purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. This multiplication produces the "lodestar." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

For calculating the lodestar, the Eleventh Circuit has explained that the *Johnson* factors remain useful to determine "what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable.'" *In re Home Depot Inc.*, 931 F.3d 1065, 1090–91 (11th Cir. 2019) (citation omitted); *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974),[2] *overruled on other grounds by*, *Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). But the Eleventh Circuit has cautioned that this "does not mean that courts should march through the *Johnson* factors—considering the time and labor required, the novelty and difficulty of the issues, the results obtained, etc.—to arrive at an hourly rate." *In re Home*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Depot Inc.*, 931 F.3d at 1090. "Instead, after counsel proposes an hourly rate based on the prevailing market rate in the community, courts may consider the *Johnson* factors to determine if the proposed rate accurately reflects the true worth of counsel." *Id.*; *see also Norman*, 836 F.2d at 1299–1300 ("We still believe that at least some of the *Johnson* factors have utility in establishing the hourly rate. In evaluating the comparability of the market rates being attested to, the district court may wish to consider any of the *Johnson* factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court.").

The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See* 488 F.2d at 717–19; *see generally Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985).

Furthermore, the Eleventh Circuit has recognized the court's expertise in evaluating the reasonableness of the requested hourly rates and hours worked. *See Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1090 (11th Cir. 2022) ("Courts are considered experts on the reasonableness of the number of hours expended and the hourly rates requested."). This recognition underscores the court's important role in ensuring an accurate lodestar calculation.

## A. <u>Prevailing Parties</u>

Defendant acknowledges that the Private Plaintiffs were the prevailing parties when the federal court ordered the Chambers County Board of Education to desegregate its school system, a point not in dispute. However, Defendant argues that this ruling took place "some thirty years" prior to the period for which the Private Plaintiffs seek attorneys' fees and that their prevailing party status is diminished due to the school board's "good faith" actions since then. (Doc. # 603 at 5.) In particular, Defendant points to the recent litigation surrounding the construction of a new, consolidated high school in Chambers County and its good faith efforts "to further desegregate the system." (Doc. # 603 at 6.) But it cites no basis grounded in legal authority that its good faith efforts in current litigation negates the Private Plaintiffs' prevailing party status. In another Alabama case arising out of the *Lee v. Macon County* school desegregation cases, the school board effectively stipulated that the plaintiffs were the prevailing parties and were entitled

to recover attorneys' fees and expenses.  *See Lee v. Randolph Cnty. Bd. of Educ.*, 882 F. Supp. 2d 1292, 1294 (M.D. Ala. 2012).  The Private Plaintiffs here also are prevailing parties, and their attorneys are entitled to reasonable attorneys' fees.

## B.    <u>Reasonable Hourly Rate</u>

 "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  The relevant legal community usually is "the place where the case is filed."  *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).  The prevailing party "bears the burden of producing satisfactory evidence that the[ ] requested rate is in line with prevailing market rates."  *Norman*, 836 F.2d at 1299; *accord Zediker v. OrthoGeorgia*, 857 F. App'x 600, 609 (11th Cir. 2021).

Defendant does not contest the reasonableness of Fred Gray's $500 hourly rate.  (Doc. # 603 at 1 n.1.)  But it argues that Stanley Gray's $450 hourly rate is excessive and should be reduced to "something substantially less, in the neighborhood of $350.00 per hour." (Doc. # 603 at 11.)  Defendant's argument for the $350 rate is based on four points.  First, Defendant suggests that much of the work has involved monitoring rather than intense litigation.  It references the 2012 decision in *Lee v. Randolph County Board of Education*, where Judge Thompson

reduced Stanley Gray's hourly rate from $250 to $200 due to the primary work involving "only monitoring th[e] litigation."  882 F. Supp. 2d at 1295.  Defendant suggests a similar approach here.  Second, it argues that adjusting the 2012 award of $200 for inflation results in an appropriate current rate of about $350 per hour.  At the very least, Defendant argues that the hourly rate should not remain constant over a twenty-five-year period.  (Doc. # 603 at 10.)  Third, Defendant criticizes the Private Plaintiffs' supporting declarations as being conclusory.  Fourth, Defendant urges against using statewide rates as the measuring stick, citing *Cullens*.

In response, Private Plaintiffs challenge Defendant's interpretation of the declarations, contending that they detail the prevailing market rate in the Middle District of Alabama for attorneys with experience similar to Stanley Gray.  (Doc. # 608 at 2–5.)  They assert that $450 per hour is a reasonable rate for an attorney with Stanley Gray's legal expertise in school desegregation litigation, whether considering the rate against the state as a whole or the Middle District of Alabama. (Doc. # 608 at 4.)  The Private Plaintiffs also highlight that the requested rate aligns with those awarded in *Stout v. Jefferson County Board of Education*, 2019 WL 7811389, at *26 (N.D. Ala. Dec. 23, 2019), where the hourly rates ranged from $400 to $500.  (Doc. # 608 at 4–5.)  They note that, although attorneys' fees are requested from 1998, the bulk of Stanley Gray's work began in 2015, when he had 25 years of legal experience and 16 years' experience in school desegregation cases.  (Doc.

# 608 at 5.)   Additionally, they argue that the court can consider payment delays when determining the prevailing market rate.   (Doc. # 608 at 5 (citing *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1210 (11th Cir. 1983), *holding modified by*, *Gaines v. Dougherty Cnty. Bd. of Educ.*, 775 F.2d 1565 (11th Cir. 1985)); *see also Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("In this circuit, where there is a delay [in payment,] the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates.").

For the reasons to follow, the court finds that the reasonable hourly rate is $400.   Some, but not substantial, weight is given to the opinions espoused in the attorney declarations, as wholistically they lack sufficient detail to establish the market rate in the Middle District of Alabama for attorneys with skills, experiences, and reputation "reasonably comparable" to Stanley Gray's.   *Norman*, 836 F.2d at 1299.   In two of the declarations, the attorneys opine that $450 per hour for Stanley Gray is reasonable based on his experience and their familiarity with the hourly rate in the Middle District of Alabama.   (Doc. # 597-1 at 5; Doc. # 597-5 at 8–9.)   The third declaration does not identify a market rate (Doc. # 597-2 at 3–4), and the fourth asserts that $450 per hour is reasonable based on prevailing hourly rates more broadly in the "Alabama Federal Courts."   (Doc. # 597-4 at 4.)   Consequently, the

court has considered the *Johnson* factors, as well as its own experience, to assess whether the proposed rate reflects the value of the services.

Key factors include the extensive time and labor invested by Stanley Gray over decades, particularly given the legal complexities of school desegregation litigation. While some of Stanley Gray's time commitment has involved less-intensive monitoring of Defendant's compliance and progress in light of desegregation orders, in recent years substantial time has been devoted to litigating the issue of the consolidation of the two high schools in Chambers County. Additionally, not only does Stanley Gray have specialized expertise in federal civil rights laws, but he has also been the lead litigator in ten other cases arising out of the *Lee v. Macon County* school desegregation litigation. (*See* Doc. # 597-1 at 4; Doc. # 597-2 at 3.) As to this case, he has played a significant role in achieving impactful outcomes. The court also has considered the non-contingent fee structure and Stanley Gray's respected reputation and longstanding client relationships. These considerations reflect both Stanley Gray's contributions and the broader context of the litigation.

The $400 hourly rate also accounts for the substantial delay in payment, the higher fees associated with intense litigation compared to monitoring, and lower fees for representation during the earlier years of this litigation. Instead of applying different rates for different periods and work intensity, an average fee has been

9

established. *See, e.g.*, *Lee*, 882 F. Supp. 2d at 1295 ("Because it appears that Seay engaged in both active litigation and monitoring for the time period in question, the court chooses an in-between, or average, figure of $295 an hour for Seay rather than a higher figure for active litigation or a lower figure for simple monitoring for all the hours spent.").

While Stanley Gray has requested an hourly rate of $450, the court notes that he has not provided any evidence regarding the rates he charges paying clients. As stated in *Dillard v. City of Greensboro*, such evidence is "powerful, and perhaps the best, evidence of [an attorney's] market rate." 213 F.3d 1347, 1355 (11th Cir. 2000) (per curiam) (citations omitted). The court also has not placed significant weight on the 2019 decision in *Stout* from the Northern District of Alabama. *See Stout v. Jefferson Cnty. Bd. of Educ.*, 2019 WL 7811389 (N.D. Ala. Dec. 23, 2019). That case, decided six years ago in a different district, approved hourly rates between $400 and $500, but did not specify the attorneys' years of experience. *See id.* at *26. Additionally, the Eleventh Circuit in *Dillard* cautioned against giving "controlling weight to prior awards," stating that doing so "over the superior evidence of a lawyer's actual billing rate" is akin to granting those "awards issue-preclusive value against a party whose interests were not even arguably represented in the prior litigation." 213 F.3d at 1355.

Furthermore, Defendant's arguments for a lower hourly rate emphasize that the Private Plaintiffs were only partially successful in their recent objections to the location of the new high school and the temporary consolidation of students during construction. (*See* Doc. # 603 at 13–14.) While duly considered, these arguments are unconvincing, as they fail to consider the broader context of the litigation, which aims to establish that the school district genuinely has eradicated "the vestiges of past discrimination to the extent practicable" and has demonstrated a genuine commitment to desegregation. *Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cnty.*, 244 F.3d 927, 942 (11th Cir. 2001) (citation omitted). This litigation has been crucial in correcting discrimination affecting black students in the Chambers County school system, and "the attorney's fee award should reflect the relief granted." *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974).

Based on this analysis, the court concludes that Stanley Gray is entitled to an hourly rate of $400. Additionally, Fred Gray is entitled to an hourly rate of $500, which is both reasonable and unopposed (Doc. # 603 at 1 n.1).

## C.   **The Number of Hours Reasonably Expended**

Applicants for attorneys' fees must exercise sound "billing judgment," ensuring that they exclude any "excessive, redundant, or otherwise unnecessary" hours from their calculations. *Am. C.L. Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citations and internal quotation marks omitted); *see also Lee v.*

*Randolph Cnty. Bd. of Educ.*, 882 F. Supp. 2d 1292, 1295 (M.D. Ala. 2012) ("An overriding consideration for lawyers in seeking to recover fees and for courts in determining what fees may be recovered is 'billing judgment.'" (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))). As described in *Lee*, "billing judgment . . . mean[s] how lawyers using 'common sense realism' bill in every-day practice." 882 F. Supp. 2d at 1295.

Based upon a careful and independent review, Stanley Gray's billing records demonstrate that the hours claimed were reasonably expended in pursuit of this litigation. In accordance with the foregoing legal standard, the court finds that, overall, Stanley Gray exercised appropriate billing judgment without including excessive, redundant, or unnecessary hours. The detailed records, including the reconstructed entries of the records destroyed by fire in earlier years, reflect a conscientious effort to allocate and record time efficiently and effectively, without duplication, thus supporting the reasonableness of the hours claimed. (*See* Doc. # 597-2, at 3–4; Doc. # 598-1.)

Defendant's arguments have been considered but are not persuasive. To illustrate, Defendant contends that several entries constitute block billing, where multiple types of work are combined into a single time entry. (Doc. # 603 at 11.) However, Defendant fails to identify the specific billing records in question, rendering the argument too conclusory for any meaningful judicial review.

12

Generalized objections to fee petitions are insufficient and carry little weight. *See Barnes*, 168 F.3d at 428 ("Objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" (citation modified)).

Defendant also contends that the time spent by the Private Plaintiffs' counsel after May 2022 and in 2023 should be excluded, as their clients did not object to the proposed consent decree until after it was agreed upon and submitted to the court. However, the court finds this time compensable and recognizes the inherent complexities of large-scale litigation involving public schools, where differing opinions, disagreements, and changes of heart can occur. *Cf. Lee v. Randolph Cnty. Bd. of Educ.*, 885 F. Supp. 1526, 1529 (M.D. Ala. 1995) (finding "that attorney's fees are available for the time spent addressing disputes within a class even when the adequacy of representation is an issue").

In sum, and contrary to Defendant's general assertions, the court concludes that the billing record sufficiently details the work performed, the reasonableness of the time spent, and its necessity. Accordingly, Stanley Gray is entitled to the full number of hours claimed, which is 892.50. In addition, Fred Gray is entitled to the full two hours claimed, which are unopposed.

D.    **The Lodestar**

Based on the preceding analysis, the lodestar has been calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates:

| Counsel | Hourly Rate | Hours | Amount |
|---------|-------------|-------|--------|
| Stanley F. Gray | $400 | 892.50 | $357,000.00 |
| Fred D. Gray | $500 | 2.00 | $1,000.00 |
| **TOTAL** | | 894.50 | $358,000.000 |

The lodestar will not be adjusted, as no argument for adjustment prevails.

E.    **Expenses**

The Private Plaintiffs request $5,070.64 in expenses for parking and tolls, taxi/Uber services, meals, hotel accommodations, air travel, photocopying, deposition costs, and mileage. (Doc. # 597 at 11–12.) These expenses are itemized in an invoice submitted to the Chambers County Board of Education. (Doc. # 597-3 at 37; Doc. # 598-1 at 38.)

Defendant asserts that the Private Plaintiffs can only recover those costs explicitly listed in 28 U.S.C. §§ 1821 and 1920, with only photocopying and deposition costs potentially eligible for recovery. However, it contends that the Private Plaintiffs have not sufficiently detailed the nature or purpose of the photocopies, identified the specific depositions claimed, or confirmed their use for the trial. Defendants argues that deposition costs are only taxable if used in the trial or otherwise necessarily obtained for the case. Without specific details on the copies

14

or depositions, Defendant maintains that additional information is needed to demonstrate which costs were necessary and how they were applied in the case. (Doc. # 603 at 14–16.)

In reply, the Private Plaintiffs argue that 42 U.S.C. § 1988 allows for the recovery of all their requested expense categories. They clarify that in December 2022, they deposed two school board members in preparation for the January 2023 trial and that the deposition transcripts were used during trial for cross-examination. (Doc. # 608 at 10–11.) Additionally, the Private Plaintiffs now have submitted an invoice for the deposition expenses, which had not been provided earlier. (Doc. # 608-1.) They also explain that the travel expenses were incurred for the mediation in Washington, D.C. (Doc. # 608 at 11.) Furthermore, they argue that the photocopies were necessary for their firm's maintenance of both electronic and paper case files. (Doc. # 608 at 10.)

The fee-shifting provision under § 1988(b) permits an award of "a reasonable attorney's fee as part of costs." The Supreme Court has clarified that "[a] statute awarding 'costs' will not be construed as authorizing an award of litigation expenses beyond the six categories listed in [28 U.S.C.] §§ 1821 and 1920, absent an explicit statutory instruction to that effect." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 340 (2019) (interpreting the Copyright Act, which gives courts the discretion to award "full costs," including "a reasonable attorney's fee"). Apart from expert

15

fees, § 1988 does not provide any additional statutory allowances. *See* § 1988(c).

Therefore, based upon *Rimini*, only litigation expenses falling within the categories

listed in 28 U.S.C. §§ 1821 and 1920 are recoverable.[3]

> Section 1920 allows the following costs:
>
> > (1)    Fees of the clerk and marshal;
> > (2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> > (3)    Fees and disbursements for printing and witnesses;
> > (4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> > (5)    Docket fees under section 1923 of this title; [and]
> > (6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The witness fees and disbursements referenced in § 1920(3) are detailed in § 1821.

*See Artisan Contractors Ass'n of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039

(11th Cir. 2001) (per curiam).  That section provides that "a witness in attendance

. . . before any person authorized to take his deposition pursuant to any rule or order

---

[3] For the thirty-six years prior to *Rimini*, courts in this circuit adhered to the precedent established by *Dowdell v. City of Apopka*, 698 F.2d 1181, 1190 (11th Cir. 1983).  In *Dowdell*, the court opined that "[r]easonable attorneys' fees under [§ 1988(b)] must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation."  698 F.2d at 1189–90.  *Dowdell* opined that recoverable expenses encompass those reasonably "incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case," including reasonable travel expenses. *Id.* at 1191–92.  The court has been unable to reconcile *Dowdell* with *Rimini*.  Aside from an unpublished Eleventh Circuit decision discussing a different issue, the court found no published Eleventh Circuit decision addressing *Dowdell* after *Rimini*.  *See Thompson v. Smith*, 805 F. App'x 893, 910 n.6 (11th Cir. 2020).

of a court of the United States" may receive $40.00 a day plus certain transportation costs.  28 U.S.C. § 1821(a)(1).

The following expenses do not qualify under §§ 1821 and 1920 and must be deducted:  travel and mileage expenses, including those incurred for the mediation in Washington, D.C. (*i.e.*, taxi/Uber services, meals, lodging, and air travel).  The remaining expenses pertain to deposition transcriptions ($1,895.95), the court reporter's attendance fee ($180.00), and photocopying ($375.00).  The court finds that that these costs were "necessarily obtained for use in the case," §§ 1920(2), 1920(4), and therefore are recoverable.   The statutorily recoverable costs total $2,450.95.

## II.    CONCLUSION

Based on the foregoing, it is ORDERED that the Private Plaintiffs' motion for interim attorneys' fees and costs (Doc. # 597) is GRANTED in part and DENIED in part as follows.  The Private Plaintiffs are awarded attorneys' fees in the amount of $358,000.00 and costs in the amount of $2,450.95.

DONE this 16th day of September, 2025.

_____/s/ W. Keith Watkins_____
UNITED STATES DISTRICT JUDGE